**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**William Harding,**
**Claimant Below, Petitioner**

**vs.)   No. 21-0503** (BOR Appeal No. 2056250)
                        (Claim No. 2019018874)

**Murray American Energy, Inc.,**
**Employer Below, Respondent**


**MEMORANDUM DECISION**

Petitioner William Harding, by Counsel J. Thomas Greene Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Murray American Energy, Inc., by Counsel Aimee M. Stern, filed a timely response.

The issue on appeal is temporary total disability benefits. The claims administrator denied a request to reopen the claim for temporary total disability benefits on June 11, 2020. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its January 8, 2021, Order. The Order was affirmed by the Board of Review on May 21, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

> (d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue

1

in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Harding, a coal miner, injured his right knee while lifting a main water line on February 23, 2019. The claim was held compensable for right knee sprain on March 8, 2019. Right knee pain and medial meniscus tear were denied as compensable diagnoses. Mr. Harding was granted temporary total disability benefits from March 6, 2019, through March 15, 2019.

A right knee MRI was performed on March 12, 2019, and showed a medial meniscus tear and small joint effusion. Mr. Harding sought treatment from Jeffrey Abbott, M.D., on March 28, 2019, for right knee pain with walking or standing for long periods of time, a popping and grinding sensation, and difficulty sleeping due to pain. After examination, Dr. Abbott diagnosed right knee osteoarthritis and medial meniscus tear. He noted that Mr. Harding continued to suffer from significant activity-limiting pain and recommended a right knee arthroscopy, which he performed on April 17, 2019. The postoperative diagnoses were right knee medial meniscus tear, lateral meniscus tear, medial plica, and grade III degenerative joint disease. Mr. Harding returned on May 2, 2019, and reported that he was healing well. Dr Abbott stated that he could return to work on June 3, 2019, with no restrictions. On June 17, 2019, the claims administrator suspended temporary total disability benefits because Mr. Harding was released to return to work by Dr. Abbott.

In a June 21, 2019, treatment note, Dr. Milton stated that Mr. Harding had returned to work about a week prior. He reported swelling and difficulty with weight bearing. Dr. Milton diagnosed post arthroscopic arthralgias and diffusion and opined that Mr. Harding may have returned to work too early. A right knee x-ray showed mild degenerative changes, small joint effusion, and a small osteophyte on the patella. Mr. Harding was excused from work.

Mr. Harding sought treatment from Wheeling Hospital Emergency Department on July 17, 2019, for right knee pain. He stated that he noticed swelling and significant pain after a recent twelve hour work shift. Mr. Harding called off of work on July 16, 2019, and July 17, 2019, to elevate his leg, which somewhat improved the swelling. X-rays showed no changes since the June 21, 2019, x-ray. The diagnoses were right knee pain and effusion, and Mr. Harding was to remain off of work until a follow-up appointment on July 22, 2019. An August 4, 2019, right knee MRI showed a questionable small medial meniscus tear and degenerative changes, primarily in the medial compartment, with chondromalacia and mild subchondral edema. In an August 5, 2019,

visit, Dr. Milton found minimal edema, joint space tenderness, and crepitation. He recommended reevaluation by an orthopedist and opined that Mr. Harding was unable to work.

David Soulsby, M.D., performed an Independent Medical Evaluation on August 7, 2019, in which he diagnosed torn right medial meniscus and osteoarthritis. He opined that Mr. Harding had reached maximum medical improvement for the torn meniscus but still had symptoms due to osteoarthritis. Dr. Soulsby stated that Mr. Harding's osteoarthritis was severe and would eventually cause the need for a total knee arthroplasty. That surgery would not be related to the compensable injury because the compensable injury did not cause or aggravate the preexisting osteoarthritis. He recommended a corticosteroid injection but stated that no treatment would fix or slow the progression of the preexisting osteoarthritis. Dr. Soulsby assessed 2% impairment due to the compensable injury. The claim was closed for temporary total disability benefits on August 12, 2019.

In an August 14, 2019, treatment note, Dr. Milton stated that Mr. Harding had less swelling. He diagnosed post-arthroscopic knee effusion, evidence of cartilage defect, and a questionable mild medial meniscus tear. Mr. Harding was to see Dr. Abbott and remain off of work. Mr. Harding returned on August 28, 2019, and his condition remained the same. On August 30, 2019, Dr. Abbott diagnosed right knee osteoarthritis and administered an injection. Mr. Harding returned to Dr. Milton on October 4, 2019, who stated that Mr. Harding returned to work, experienced increased symptoms, and stopped working. Dr. Milton diagnosed post-operative arthralgias and opined that Mr. Harding was unable to work.

Dr. Milton completed an Attending Physicians' Report on October 9, 2019, in which he stated that Mr. Harding was temporarily and totally disabled from March 6, 2019, to November 4, 2019. He opined that Mr. Harding had not reached maximum medical improvement and was not ready for a permanent partial disability rating. In an October 18, 2019, treatment note, Dr. Abbott stated that Mr. Harding saw no relief from a right knee injection and still reported pain, swelling, popping, clicking, and grinding. Dr. Abbott diagnosed osteoarthritis and recommended viscosupplementation. Mr. Harding underwent a right knee x-ray on October 18, 2019, which showed osteoarthritis in the medial compartment with a moderate joint effusion.

On October 25, 2019, Dr. Milton noted that Mr. Harding had right knee osteoarthritis and that viscosupplementation was recommended. Dr. Milton informed Mr. Harding that having osteoarthritis and viscosupplementation noted in his records could interfere with his work-related injury issues. Mr. Harding stated that he was still unable to work.

Dr. Milton testified in a November 13, 2019, deposition that he has treated Mr. Harding on numerous occasions for the compensable injury. Mr. Harding attempted to return to work on June 14, 2019, but was unable to perform his duties. He again tried to return to work on July 1, 2019, but was taken off of work after seeking emergency treatment on July 17, 2019. He had not returned to work since that day. Dr. Milton was asked if referral to an orthopedist was necessary to treat the compensable injury. He stated that the issue was complicated because Mr. Harding's recurrence of symptoms post-surgery was multifactorial in nature. He testified that a total knee replacement was more likely necessitated by Mr. Harding's pre-existing conditions. He further testified that

3

meniscal tears are multifactorial in nature and can be seen in osteoarthritic changes. Dr. Milton stated that he removed Mr. Harding from work on June 21, 2019, because he was symptomatic and did not feel like he could work. He testified that it was possible that Mr. Harding's symptoms were the result of degenerative joint disease.

Mr. Harding was seen by Dr. Milton on November 20, 2019, and was diagnosed with persistent postoperative arthralgia. Mr. Harding remained symptomatic and was unable to work. Mr. Harding was also seen that day by Dr. Abbott. He reported continued knee pain with no change. Dr. Abbott diagnosed osteoarthritis. On November 22, 2019, Dr. Milton completed an Attending Physician's Report stating that Mr. Harding was disabled from March 6, 2019, through December 6, 2019. Mr. Harding returned to Dr. Abbott on November 27, 2020, and reported that his symptoms were unchanged following his viscosupplementation injection. He was given another injection and returned for follow up on December 5, 2019. At that appointment, the plan was to resume normal activity.

Mr. Harding was treated by Dr. Milton on December 11, 2019, and he reported a little bit of improvement. The diagnoses were right knee medial sprain, medial meniscus tear, and post-operative arthralgias. Dr. Milton noted that Mr. Harding believed he was unable to work. He was to return in two to three weeks. In a December 13, 2019, Attending Physician's Report, Dr. Milton stated that Mr. Harding was disabled from March 6, 2019, to no specified end date. It was noted that Mr. Harding's next appointment was on January 6, 2020.

On January 6, 2020, Mr. Harding returned to Dr. Milton. He had not returned to work and was receiving sickness and accident benefits. Dr. Milton noted symptoms of patellofemoral dysfunction and persistent complaints of post-operative arthralgias. Mr. Harding was to continue home exercises and follow up in six weeks. On January 22, 2020, Mr. Harding returned to Dr. Milton and stated that he was pushing a cart the week before when he felt a popping sensation and instability in his knee. Dr. Milton diagnosed post-operative arthralgias. In a January 24, 2020, treatment note, Dr. Abbott noted that injections provided no pain relief for Mr. Harding. He diagnosed osteoarthritis. Because conservative measures had failed, Dr. Abbott recommended a total right knee replacement.

In a February 14, 2020, Order, the Office of Judges reversed the claims administrator's decision denying temporary total disability benefits and a decision denying a request for a reevaluation by Dr. Abbott. The Office of Judges granted temporary total disability benefits from June 21, 2019, through October 18, 2019, and authorized the reevaluation.

Mr. Harding was seen by Dr. Milton on February 28, 2020. It was noted that he was currently appealing a denial of a total right knee replacement but was going to undergo the surgery on his own insurance. He was to remain off of work and return in five weeks. Dr. Abbott performed a total right knee replacement for the diagnosis of degenerative joint disease.

Mr. Harding completed a claim reopening application on March 6, 2020, requesting temporary total disability benefits from October 19, 2019, to May 11, 2020. He asserted that he had not sustained any other injuries. The employer's portion was completed by Amy Bailey,

human resources coordinator, and indicated Mr. Harding began missing work on July 15, 2019. On March 17, 2020, Dr. Abbott noted that Mr. Harding's right knee was healing well post-surgery. He was to continue physical therapy and return in four weeks. Dr. Milton completed a claim reopening application on March 26, 2020, indicating Mr. Harding was temporarily and totally disabled from March 2, 2020, to June 14, 2020, following his right knee replacement. Mr. Harding followed up on May 18, 2020, and Dr. Milton recommended he continue physical therapy and follow up in one month.

In a May 28, 2020, treatment note, Dr. Abbott stated that Mr. Harding was doing well and planned to return to work on June 22, 2020. Dr. Milton completed an Attending Physician's Report in which he stated that Mr. Harding was disabled from March 6, 2019, through June 12, 2020. On June 8, 2020, Dr. Milton noted that Mr. Harding had finished formal physical therapy. He was to follow up with Dr. Abbott on June 30, 2020, and would likely be released. Dr. Milton completed an Attending Physician's Report on June 9, 2020, stating that Mr. Harding was disabled from March 6, 2019, to July 3, 2020.

In a June 11, 2020, decision, the claims administrator denied Mr. Harding's March 26, 2020, request to reopen his claim. It stated that the total knee replacement was neither requested nor authorized in the claim and the diagnosis given for the surgery was not a compensable condition. On July 1, 2020, Dr. Milton stated that Mr. Harding continued to heal, however, he remained unable to work. Additionally, Dr. Milton requested the addition of medial meniscus tear to the claim. He completed an Attending Physician's Report the following day and stated that Mr. Harding was disabled from March 6, 2019, to August 3, 2020.

On August 5, 2020, Dr. Milton noted that the addition of arthrosis to the claim was denied. Dr. Milton stated after examination that Mr. Harding continued to show improvement. Mr. Harding stated that he was unlikely to return to coal mining. Dr. Milton recommended he continue home exercises and follow up in two months. On August 14, 2020, the claims administrator added medial meniscus tear to the claim.

David Soulsby, M.D., performed an Independent Medical Evaluation on August 18, 2020, in which he noted that he previously examined Mr. Harding a year prior. At that time, he diagnosed osteoarthritis, a preexisting condition, and a torn meniscus. After reviewing the records, Dr. Soulsby opined that the evidence does not support an aggravation or progression of the compensable injury. He further opined that Mr. Harding's right knee symptoms are consistent with osteoarthritis, a preexisting condition. Radiographic and diagnostic evidence show only the progression of osteoarthritis. Dr. Soulsby asserted that the total knee replacement was not necessary medical treatment for Mr. Harding's compensable conditions. Dr. Soulsby explained that osteoarthritis did not develop over the course of a few months. He also stated that, though the meniscus tear happened at work, Mr. Harding's torn meniscus was caused by arthritis. He asserted that osteoarthritis presents in many ways. Some cases slowly progress over time and others remain asymptomatic for a long period of time and then rapidly progress.

The Office of Judges affirmed the claims administrator's denial of a reopening of the claim in its January 8, 2021, Order. It found that the claim was held compensable for right knee sprain

5

and medial meniscus tear, and osteoarthritis has never been added to the claim. The Office of Judges found that the requested period of temporary total disability was not due to Mr. Harding's compensable medial meniscus tear but was the result of his osteoarthritis. Further a total knee replacement is not treatment that would be necessary for a torn meniscus. The Office of Judges found Dr. Soulsby's report to be the most probative of record. He concluded that osteoarthritis and the subsequent treatment for the condition are not compensable or authorized in the claim. The Office of Judges concluded that Mr. Harding was not entitled to temporary total disability benefits for the period of time in which he underwent a total right knee replacement due to osteoarthritis, a noncompensable condition. The Board of Review affirmed the Office of Judges' Order on May 21, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-5-3, in order to reopen a claim for temporary total disability benefits, the claimant must make an application in writing showing a progression or aggravation of the compensable condition. Mr. Harding has failed to show a progression or aggravation of his compensable right knee sprain or medial meniscus tear. A preponderance of the evidence indicates that Mr. Harding's period of temporary total disability was not due to a compensable condition but was instead the result of preexisting, noncompensable osteoarthritis and the subsequent treatment for that condition.

Affirmed.

**ISSUED: May 2, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn